UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

MARVIN BOOKER,

    Defendant.
_____/

Case No. 20-cr-20255

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR BOND AND REVOCATION OF DETENTION ORDER [#7]**

**I. INTRODUCTION**

On March 9, 2020, Defendant Marvin Terrell Booker, Jr. ("Defendant") was charged in a criminal complaint for sex trafficking of a minor, in violation of 18 U.S.C. § 1591. ECF No. 1, PageID.1. Defendant was subsequently charged in an indictment with production of child pornography, sex trafficking of children, receipt of child pornography, and coercion and enticement of a minor charges. *See* ECF No. 13. On April 27, 2020, a detention hearing was held before Magistrate Judge R. Steven Whalen. This hearing was continued to April 28, 2020. Magistrate Judge Whalen concluded that the Government established with clear and convincing evidence that there is no condition or combination of conditions of release that will


reasonably assure the safety of other persons and the community. ECF No. 5, PageID.12. Thus, Defendant was detained pending trial. *Id.* at PageID.13.

Presently before the Court is the Defendant's Motion for Bond and Revocation of Order of Detention, filed on May 6, 2020. ECF No. 7. The Government filed a Response on May 12, 2020. ECF No. 10. A hearing on this matter was held on July 2, 2020. For the reasons that follow, the Court will **DENY** Defendant's Motion for Bond and Revocation of Order of Detention [#7].

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Offense

On February 22, 2020, the Warren Police Department conducted a traffic stop on a vehicle driven by Defendant. ECF No. 1, PageID.3. During the traffic stop, the officers made contact with both Defendant and Minor Victim One ("MV-1"), the alleged victim in the instant matter. *Id.* Defendant and MV-1 allegedly provided "inconsistent stories about where they were coming from and how they knew each other." *Id.* The officers arrested Defendant for driving while his license was suspended and other outstanding warrants. ECF No. 10, PageID.40

During the traffic stop, the officers separated and questioned Defendant and MV-1. While seated in the back of the patrol car, Defendant told officers, "her name [MV-1] for sure. I ain't going to lie to you about that. She sixteen." *Id.* MV-1 confirmed that she was sixteen years of age and provided the officers with two

telephone numbers. *Id.* The officers determined that one of the telephone numbers was associated with several postings on the prostitution website "listcrawler.com." *Id.* These postings advertised a female matching the physical description of MV-1 showing various portions of her body partially clothed. ECF No. 1, PageID.4.

Defendant was then taken to the Warren Police Department for additional questioning. *Id.* During his interview, Defendant provided a statement admitting that he posted MV-1 in online advertisements "a few times" for commercial sex acts. ECF No. 10, PageID.41. Additionally, Defendant admitted that he previously drove MV-1 to two different houses to do commercial sex dates. *Id.* He also allegedly provided the officers with detail concerning his arrangement with MV-1: he was to split the profits from MV-1's commercial sex dates 50/50. *Id.* Defendant purportedly admitted to having sex with MV-1 twice and receiving oral sex from her once. *Id.*

Officers continued their investigation by searching MV-1's cell phone, upon obtaining her consent, and Defendant's cell phone, upon obtaining a search warrant. ECF No. 1, PageID.4. A review of these devices revealed that Defendant and MV-1 exchanged over one-thousand text messages between February 5, 2020 and February 20, 2020. *Id.* at PageID.5. In its Response brief, the Government emphasizes that these records, along with Defendant's Facebook profile, revealed that MV-1 was not the only woman that he recruited to perform commercial sex acts.

ECF No. 10, PageID.41.  Further, "[t]he records [] revealed that exploiting women is not [Defendant's] only source of income—he also illegally sells firearms and checking account information." *Id.*

Moreover, Defendant's Facebook records also revealed how he recruits young women like MV-1 to perform commercial sex acts.  *Id.* at PageID.42.  After recruiting the women, Defendant allegedly posted them online in advertisements.  *Id.*  He purportedly asked MV-1 to send him naked or partially clothed photos for her advertisements.  *Id.* at PageID.43

Defendant was arrested pursuant to a federal criminal complaint that charged him with sex trafficking of a minor, in violation of 18 U.S.C. § 1591.  He appeared on April 27, 2020 and was ordered detained pending trial after his detention hearing was continued to April 28, 2020.  *See* ECF No. 5.  On June 17, 2020, a grand jury found probable cause to indict Defendant on four separate charges, including production of child pornography, sex trafficking of children, receipt of child pornography, and coercion and enticement of a minor charges.  *See* ECF No. 13.

### B. Defendant's Background

Defendant is twenty years old and a lifelong resident of southeast Michigan. Defendant and his fiancé, Ms. Sharee Briscoe, have resided in Warren, Michigan since May 1, 2019.  Defendant and Ms. Briscoe live at this residence with their two

minor children, ages four and two. Defendant has worked as an installer for his parents' company, KSCC Hardwood Flooring, since January 1, 2019.

Defendant is asthmatic and utilizes a Ventolin inhaler and breathing machine to treat his symptoms. He does not report any history of mental health illness. However, Ms. Briscoe believes that Defendant may have been prescribed medication for Attention Deficit Disorder ("ADD").

Defendant reports that he first began experimenting with marijuana at age twelve. He reports daily use of marijuana. Defendant denies use of any other drug or alcohol. He also does not report any history of substance abuse treatment.

Defendant has a history of several arrests and outstanding warrants, beginning at the age of seventeen. The majority of Defendant's convictions are misdemeanor convictions. Several of his convictions include convictions for assaultive offenses and firearm offenses. Defendant has two outstanding warrants for failures to appear in both the 36th and 37th District Courts.

### C. Detention Hearing

Prior to his detention hearing, Pretrial Services recommended that Defendant be detained pending trial. On April 27, 2020, Defendant appeared before Magistrate Judge Whalen. ECF No. 7, PageID.15. This hearing was continued to April 28, 2020. *Id.* Magistrate Judge Whalen found that detention is warranted. ECF No. 5.

In his determination, Magistrate Judge Whalen emphasized that the instant offense, sex trafficking of a minor, was facilitated through Defendant's social media and his use of a cell phone. *Id.* at PageID.13. He noted that this is a serious offense and the evidence presented by the Government demonstrates that Defendant used his cell phone in furtherance of other criminal activity, including sex trafficking and sale of firearms. *Id.* Magistrate Judge Whalen determined Defendant poses a risk of continuing "similar criminal activity" if he had continued access to a cell phone should the Court order house arrest. *Id.* He held that:

> Traditional electronic monitoring with preclusion of use of cell phone might address this concern, but at this time, given the COVID-19 pandemic and the requirements of social distancing, the ankle bracelet necessary for electronic monitoring cannot be safely installed; to do so would present an unacceptable risk to Pretrial Services officers. The only other method of location monitoring is Smart Link, which involves monitoring by means of the Defendant's cell phone.

*Id.* While Magistrate Judge Whalen found that Defendant presented evidence sufficient to rebut the presumption under 18 U.S.C. § 3142(e)(2), he found that the Government had established by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community. *Id.* at PageID.12. He thus ordered Defendant to be detained pending trial. *Id.*

### III. LEGAL STANDARD

Title 18 U.S.C. § 3145(b) allows the district judge to review an order detaining a defendant. It is a *de novo* hearing. *United States v. Jones*, 804 F. Supp. 1081 (S.D.

6

Ind. 1992); *U.S. v. Delker*, 757 F.2d 1390, 1394 (3d Cir. 1985). "The default position of the law . . . is that a defendant should be released pending trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). Generally, in order for a defendant to be detained, the government must establish the (1) "risk of flight by a preponderance of the evidence" or (2) "dangerousness to any other person or the community by clear and convincing evidence." *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004). Pre-trial detention shall be ordered only if a judicial officer "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).

In determining whether there are conditions which will reasonably assure the appearance of the person and the safety of the community, the district court must make findings based on the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger posed by the person's release. 18 U.S.C. § 3142(g).

### IV. ANALYSIS

#### A. The Parties' Arguments

In his present Motion, Defendant moves this Court, pursuant to 18 U.S.C. § 3145(b), to grant him bond pending trial. ECF No. 7. He argues that he poses neither

a danger to the community nor a risk of flight under 18 U.S.C. § 3142(c). *Id.* at PageID.16. Defendant emphasizes that conditions can be imposed to alleviate concerns, including (1) that he reside with Ms. Briscoe and their two children; (2) Ms. Briscoe's willingness to serve as his third party custodian; (3) his placement on a GPS tether; (4) home confinement; and (5) his prohibition to use any social media and to only use Ms. Briscoe's cell phone for check-ins with Pretrial Services and counsel. *Id.* Moreover, Defendant emphasizes that he suffers from asthma and thus he "is in the group that may be more susceptible to contracting the COVID-19 virus." *Id.* at PageID.18. In support of his Motion, Defendant attaches an affidavit by Dr. Chris Beyrer—who has not evaluated Defendant—which discusses the risks of COVID-19 in detention facilities. *See* ECF No. 7-1. At the hearing, Defendant stressed how there are now two positive cases of COVID-19 in the Livingston County Jail.

The Government argues that Defendant is both a danger to the community and a flight risk. ECF No. 10, PageID.40. In its Response brief, the Government contests Defendant's citation to the generalized risk to prisoners because of COVID-19; Defendant's alleged unsubstantiated asthma condition; and Defendant's use of Dr. Beyrer's affidavit. *Id.* at PageID.43. The Government asserts that Defendant cannot rebut the presumption of dangerousness against him and that the factors set forth in 18 U.S.C. § 3142(g) weigh heavily in favor of detention pending trial. *Id.* at

PageID.44. Moreover, the Government argues that Defendant's alleged asthma does not provide grounds for his release. *Id.* at PageID.48. At the hearing, the Government emphasized that the Livingston County Jail staff is taking several precautions to protect incarcerated individuals like Defendant. Moreover, the Government stressed that the two individuals who have tested positive for COVD-19 are now in quarantine.

### B. The Bail Reform Act

Under § 3142 of the Bail Reform Act, there are numerous offenses for which a rebuttable presumption arises that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community," including the crimes described in 18 U.S.C. § 3142(f)(1). Here, Defendant was initially charged on a criminal complaint, and later indicted, for a violation of 18 U.S.C. § 1591. ECF Nos. 1, 13. There is thus a presumption that Defendant should be detained.

Magistrate Judge Whalen determined at the detention hearing that Defendant presented evidence sufficient to rebut this presumption. ECF No. 5, PageID.12. He went on to find, however, that the factors under 18 U.S.C. § 3142(g) support detention. *Id.* In weighing all four factors under § 3142(g), this Court also finds that the evidence establishes by clear and convincing evidence that no condition, or

9

combination of conditions of release, will reasonably assure the safety of other persons and the community.

### 1. Nature and Characteristics of the Charged Offense

The first factor the Court must consider is the nature and circumstances of the offenses charged against Defendant. The Government argues that the offenses for which Defendant is charged support detention. Specifically, the Government asserts the production of child pornography, Count One, carries a fifteen-year mandatory minimum. ECF No. 10, PageID.45. Further, both sex trafficking of a minor and enticement of a minor, Counts Two and Four, respectively, carry a ten-year mandatory minimum. *Id.*

The full extent of the nature and circumstances of the charged offenses is unquestionably serious. Specifically, the charged offenses involve a minor victim, who Defendant allegedly trafficked by posting her in online advertisements for commercial sex; transporting her to and from scheduled dates; and profiting from the commercial sex acts which she performed. Further, Defendant allegedly produced child pornography of her and enticed her to send him sexually explicit images. This first factor thus weighs in favor of Defendant's detention.

### 2. The Weight of the Evidence

The second factor the Court must consider is the weight of the evidence against Defendant. "This factor goes to the weight of the evidence of dangerousness,

not the weight of the evidence of the defendant's guilt." *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010).

The Government notably does not address this factor in its Response. At the hearing, the Government explained that Defendant poses a danger to young women and emphasized that Defendant has demonstrated repeated criminal behavior. The Court find that the weight of the evidence of Defendant's dangerousness is strong in light of the alleged offenses. Here, the Government's case against Defendant involves one minor, MV-1. Indeed, "[*j*]*ust* one sexually-related offense against *just one* minor is enough to imply dangerousness." *United States v. Fitzhugh*, No. 16-mj-30364, 2016 WL 4727480, at *5 (E.D. Mich. Sept. 12, 2016) (emphasis in original) (ordering detention where defendant was facing charges of production of child pornography and online enticement).

In his Motion, Defendant does not come forward with any evidence to mitigate his dangerousness. He instead suggests that he could be released to reside with his fiancé and their two children. ECF No. 7, PageID.23. Defendant further asserts that he could be placed on a GPS tether for Pretrial Services to accurately monitor his movement. *Id.* While the Court finds that such conditions may mitigate a concern for Defendant's future court appearances, such conditions do not ease the Court's concern of his dangerousness.

Moreover, the Court takes seriously Pretrial Services' current abilities to supervise Defendant. In its Response, the Government emphasizes the strain of limited resources which Pretrial Services and local law enforcement is currently operating within during the COVID-19 pandemic. ECF No. 10, PageID.47–48. Specifically, the Government alleges that Pretrial Service officers have been directed to protect themselves from potential infection by staying six feet away from the defendants which they supervise; ceasing physical inspections of tethers; and conducting "virtual tours" of defendants' homes. *Id.* at PageID.48. The Court agrees with the Government's concern that such limitations would make it difficult for Pretrial Services to monitor Defendant without the internet, a space where Defendant allegedly posted advertisements for MV-1's commercial sex acts. In sum, the second factor also weighs in favor of Defendant's detention.

### 3. History and Characteristics of the Defendant

The third factor requires that the Court review the history and characteristics of the Defendant, which are statutorily separated into two categories. The first category examines the Defendant's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). The second category asks "whether, at the time of the current

offense or arrest, [Defendant] was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law." 18 U.S.C. § 3142(g)(3)(B).

Here, Defendant is a lifelong resident of the community. His fiancé, minor children, mother, and siblings live in the area. Defendant has worked as an installer for his parents' company, KSCC Hardwood Flooring, since January 1, 2019. Defendant is asthmatic and utilizes a Ventolin inhaler and breathing machine to treat his symptoms. Defendant does not report any history of mental health illness nor any history of substance abuse treatment. He reports daily use of marijuana.

The Government directs the Court to Defendant's criminal history, which includes convictions for assaultive offenses, firearm offenses, and theft offenses. ECF No. 10, PageID.45. The Government emphasizes that while Defendant was under court supervision for a felony firearms offense, Defendant violated probation by engaging in new criminal activity. *Id.* at PageID.46. The Government further asserts that Defendant had two warrants for his arrest for failure to appear when he was arrested for the instant offenses. *Id.* The Government thus insists that Defendant's history and characteristics weigh heavily in favor of detention.

The Court also takes notice that Defendant seeks release to his Warren residence with this fiancé and two minor children. Defendant reports that he has resided at this residence since May 1, 2019, which overlaps with the time frame in

which he allegedly committed the underlying offenses. The Court thus questions the adequacy of Defendant's proposed release plan, namely, the danger to the community, and to MV-1.

Based on the foregoing considerations, the Court agrees that this third factor also weighs in favor of detention.

### 4. The Nature and Seriousness of the Danger Posed by Defendant's Release

The fourth and final factor demands that the Court consider "the nature and seriousness of the danger to any person or the community that would be posed by [Defendant's] release." 18 U.S.C. § 3142(g)(4). The Court must "look to more than whether or not the defendant himself has been guilty of physical violence," but also to the safety of the community as a whole. *United States v. Vance*, 851 F.2d 166, 169 (6th Cir. 1988). Here, for all the reasons set forth above, the Court finds that Defendant would pose a danger to the community, as well as to MV-1, if released on bond. Furthermore, the Court weighs strongly the recommendation from Pretrial Services, which concluded that there was no condition or combination of conditions that could reasonably assure Defendant's appearance and the safety of the community. This final factor thus also weighs in favor of detention.

The Court agrees with the Government's concern for MV-1's safety if Defendant was released. *See* ECF No. 10, PageID.46. While electronic monitoring and the Smart Link technology is available for qualifying defendants—even during

the COVID-19 pandemic—the Court questions how Pretrial Services can effectively monitor Defendant's restricted use of computers and social media platforms. The offenses in the instant matter were allegedly committed through Defendant's smartphone. *See generally* ECF No. 1. Moreover, the Court questions the adequacy of Defendant's proposed release plan to his Warren residence given that this former living situation allegedly did not dissuade him from engaging in criminal activity with MV-1.

Based on the foregoing considerations, the Court concludes that no conditions or combination of conditions will reasonably assure the safety of the community if Defendant were released on bond pending trial.

### C. COVID-19

Finally, the Court takes notice of Defendant's health concerns in light of the COVID-19 pandemic. In his Motion, Defendant focuses a majority of his argument on his particular susceptibility to COVID-19 due to his asthma. Indeed, Defendant reports that he uses Ventolin inhaler and breathing machine to treat his symptoms. In support of his argument, Defendant relies on an affidavit by Dr. Beyrer, which discusses the risks of COVID-19 in detention facilities. Defendant is currently being held at Livingston County Jail.

Defendant's asthma was first addressed at his detention hearing before Magistrate Judge Whalen. At the hearing, Defendant's counsel confirmed that

Defendant uses an inhaler at Livingston County Jail. He also explained that Defendant's fiancé and mother confirmed that he uses a breathing machine. Defendant also informed the court that he hears people coughing at the Livingston County Jail and that he is afraid.

At the time of this writing, there are two confirmed cases at the Livingston County Jail. *2 Inmates at Livingston County Jail Test Positive for COVID-19*, WXYZ Detroit (June 24, 2020, 4:25 PM) (https://www.wxyz.com/news/coronavirus/2-inmates-at-livingston-county-jail-test-positive-for-covid-19). These positive cases dispel the Government's argument that Defendant's fears about COVID-19 spreading in the facility are "purely speculative." ECF No. 10, PageID.50. The Court does take notice of the specific measures which the administrators and staff at Livingston County Jail have established to minimize transmission of the novel coronavirus disease, including a pre-screening process for new incarcerated individuals; more frequent cleaning; and a wide-spread distribution of face masks for both staff and incarcerated individuals. Moreover, the Government explained at the hearing that the two incarcerated individuals who tested positive have been placed in quarantine and have not been exposed to the general population.

The Court reiterates that all four factors under § 3142(g) weigh in favor of detention. In sum, while the Court is concerned with the special risks that COVID-19 poses to incarcerated individuals like Defendant, the Court concludes that the

evidence establishes by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of other persons and the community should Defendant be released on bond pending trial.

## V. CONCLUSION

Accordingly, for the reasons articulated above, **IT IS ORDERED** that Defendant's Motion for Bond and Revocation of Order of Detention [#7] is **DENIED**.

**IT IS SO ORDERED.**

Dated: July 6, 2020

<div style="text-align:right">

s/Gershwin A. Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge

</div>

### CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
July 6, 2020, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager